**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| ALAN GUEST, | |
| Movant, | CIVIL ACTION NO.: 5:18-cv-18 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 5:14-cr-17) |
| Respondent. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Alan Guest ("Guest"), who is currently housed at the Federal Correctional Complex in Coleman, Florida, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.[1] Doc. 1. Guest filed two Motions to Supplement, and the Government filed Responses. Docs. 20, 21, 35, 37. Guest has also filed a Motion for Summary Judgment and a Motion to Grant his § 2255, docs. 29, 38, and the Government has responded. Docs. 31, 39. The Government also filed its Response to Guest's § 2255 Motion. Doc. 35.

For the reasons which follow, I **RECOMMEND** the Court **DENY** Guest's § 2255 Motion, Motion for Summary Judgment, and Motion to Grant, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Guest *in forma pauperis* status

---

[1] Guest also submitted a Motion to Correct Clerical Error and to Withdraw Appeal, as well as a Motion for Hearing to Defend that Motion. Docs. 3, 4. It appears these documents should have only been filed in Guest's criminal case, 5:14-cr-17. Thus, the Court **DIRECTS** the Clerk of Court to **TERMINATE** Documents Numbered 3, 4, 7, and 8 in Guest's 2255 proceeding. It also appears the Honorable Lisa Godbey Wood's December 18, 2020 Order in Guest's criminal proceedings should have resolved these filings, which appear in Criminal Case 5:14-cr-17 as Documents Numbered 61, 62, 66, and 67.

on appeal and a Certificate of Appealability.  I **GRANT** Guest's Motions to Supplement but

**DENY** Guest's request for an evidentiary hearing, doc. 1 at 14.

## BACKGROUND

Guest was charged and indicted for conspiracy to possess with intent to distribute and

distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (count 1);

two counts of distribution of a quantity of methamphetamine, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (counts 2 and 3); and four counts of use of a

communication facility, in violation of 21 U.S.C. § 843(b) (counts 4–7).  United States v. Guest,

5:14-cr-17 (S.D. Ga.) ("Crim. Case"), Doc. 1.  Guest's counsel, David McCrea, filed a number of

pre-trial motions on Guest's behalf, which the Court dismissed as moot based on the parties'

representations these motions had been resolved.  Crim. Case, Docs. 15–21, 28.

Mr. McCrea was able to negotiate a plea agreement with the Government whereby Guest

agreed to plead guilty to one count of distribution of a quantity of methamphetamine (count 3 of

the indictment).  Crim. Case, Doc. 32.  In exchange, the Government agreed to not object to a

recommendation Guest receive a three-level reduction for acceptance of responsibility and move

the Court to dismiss the remaining counts against Guest.  Id. at 2–3.

The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing.  At the

outset of this hearing, Judge Wood informed Guest the purpose of the hearing was to make sure

(1) he understood the case pending against him and all the rights he was giving up if she

accepted his plea, (2) he was pleading guilty because that was what he wanted to do after

consultation with Mr. McCrea, and (3) there was a factual basis for the plea.  Crim. Case,

Doc. 44 at 3, 8–9.  During the plea hearing, Drug Enforcement Agency Special Agent Robert

Livingston provided the factual basis for the plea, Guest admitted to the truth of Livingston's

testimony, Judge Wood accepted Guest's plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 21–25.  In the PSR, the Probation Office determined Guest had two prior felony convictions for crimes of violence, and, therefore, qualified as a career offender under U.S.S.G. § 4B1.1.  PSR, ¶ 26.  At the sentencing hearing, Judge Wood overruled Guest's objections to the PSR and concluded Guest was due to be sentenced as a career offender.  Ultimately, Judge Wood sentenced Guest to 160 months' imprisonment, which was within the recommended guideline range.  Crim. Case, Doc. 35.

Guest has now filed a § 2255 Motion to challenge his conviction and sentence, as supplemented.  Docs. 1, 20, 37.  The Government filed Responses.  Docs. 21, 35, 40.  This matter is fully briefed and ripe for review.

## DISCUSSION

Guest contends his prior convictions under the Georgia terroristic threats statute are no longer qualifying predicate offenses under the career offender provision of the Sentencing Guidelines, § 4B1.1.  Doc. 1 at 4.  Relatedly, Guest contends since he no longer can be considered a career offender, he is entitled to receive a two-point reduction under Amendment 782.  Id. at 5.  Guest asserts his counsel was ineffective because he failed to inform Guest of the Government's obligation to prove the drugs at issue were methamphetamine or ice.  Id. at 6–7. In addition, Guest maintains his plea was not entered into knowingly and voluntarily as a result of ineffective assistance of counsel.[2]  Id. at 8.  Guest contends Mr. McCrea rendered ineffective

---

[2]    Guest labels all of this claims as ineffective assistance of counsel, perhaps in an attempt to circumvent the appeal and collateral attack waivers found in his plea agreement.  The Court addresses the merits of any arguments, notwithstanding any ineffective assistance label, where appropriate.

assistance by filing an <u>Anders</u> brief on appeal.  <u>Id.</u> at 9.  Guest seeks to be resentenced without

the § 4B1.1 enhancement.

## I.      Whether Guest's Previous Convictions are Predicate Offenses

According to Guest, his prior convictions under Georgia's terroristic threats statute,

O.C.G.A. § 16-11-37(a), no longer qualify as predicate offenses for application of the career

offender enhancement under the Sentencing Guidelines, § 4B1.1.  Doc. 1 at 16.  Guest argues

courts have determined the Georgia statute is "overbroad" and "incongruent with and broader

than the conduct encompassed by" the Armed Career Criminal Act's ("ACCA") elements clause,

and the determination is retroactively applicable to cases on collateral review.  <u>Id.</u> at 18–19.

Guest contends he should be resentenced without the career offender enhancement to a term of

92 to 115 months' imprisonment.  <u>Id.</u> at 20–21.  In his Supplements, Guest contends his

terroristic threats convictions no longer qualify as predicate offenses under <u>Davis v. United</u>

<u>States</u>, 139 S. Ct. 2319 (2019), or the First Step Act, § 401(c).[3]  Doc. 20 at 1–2; Doc. 37 at 1–2.

The Government argues the Eleventh Circuit Court of Appeals has determined Georgia's

terroristic threat statute is divisible and a prior conviction for threatening "'to commit any crime

of violence' qualifies as a violent felony under the ACCA."  Doc. 35 at 8–9 (quoting <u>United</u>

<u>States v. Oliver</u>, 962 F.3d 1311, 1321 (11th Cir. 2020)).  In addition, the Government notes the

definition of "violent felony" under the ACCA is virtually identical to the definition of "crime of

violence" under § 4B1.1 (the "career offender" enhancement provision), and, therefore, decisions

about one definition apply with equal force to the other.  <u>Id.</u> at 9 (citing <u>Turner v. Warden</u>

<u>Coleman FCI (Medium)</u>, 709 F.3d 1328, 1335 (11th Cir. 2013)).  The Government asserts

---

[3]      The Government does not oppose Guest's Motions to Supplement and addressed those
contentions in its Response.  Doc. 35 at 2.  Thus, the Court considers the assertions in these Motions as if
Guest had brought them initially.  In addition, the assertions made in Documents 20 and 37 are identical.

Guest's prior convictions under Georgia's terroristic threats statute qualify as threatening to commit a crime of violence under Oliver, as he threatened to kill other people, and, therefore, qualify Guest as a career offender.  Id.  The Government also asserts Davis v. United States, 139 S. Ct. 2319 (2019), provides Guest with no relief because he was not charged with or convicted of an 18 U.S.C. § 924(c) offense, his prior convictions are predicate offenses under the elements clause of the career offender provision, and the United States Supreme Court has already found the residual clause of § 4B1.2(a) is constitutional.  Id.  In addition, the Government notes Guest's First Step Act arguments fail because § 401 of the Act amends only the Controlled Substances Act, not the ACCA or any Guidelines' provisions and because § 401 applies to an offense committed before the Act's enactment only if a sentence was not imposed as of the date of enactment, and Guest's sentence was imposed well before enactment.  Id. at 10.

Under § 4B1.1 of the Sentencing Guidelines, a defendant is properly designated as a career offender if he was at least 18 years old at the time he committed the offense for which he is being sentenced, that offense "is a felony that is either a crime of violence or a controlled substance offense," and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  Only the last requirement is at issue here.  "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ."  U.S.S.G. § 4B1.2(a)(1).

The career offender provision of the Guidelines was applied to Guest based on his 2003 and 2008 convictions in the Pierce County Superior Court for making terroristic threats against

sheriff's deputies.[4]  PSR, ¶¶ 26, 33, 37.  Both of Guest's convictions under Georgia law involved

at least the threatened use of violence against other persons.  Id. at ¶¶ 33, 37.  These convictions

are qualifying "crimes of violence" under § 4B1.1 because they were state law crimes,

punishable by at least one year of imprisonment, for making terroristic threats.  O.G.G.A. § 16-

11-37(a) (2010) ("A person commits the offense of a terroristic threat when he or she threatens to

commit any crime of violence . . . with the purpose of terrorizing another . . . ."); O.C.G.A. § 16-

11-37(c) ("A person convicted of the offense of a terroristic threat shall be punished by a fine of

not more than $ 1,000.00 or by imprisonment for not less than one nor more than five years, or

both.).

In Oliver, the Eleventh Circuit Court of Appeals held "Georgia's terroristic-threats

statute, O.C.G.A. § 16-11-37(a) (2010), is divisible, and the threat that predicated [defendant]'s

conviction—a threat 'to commit any crime of violence'—requires the threatened use of violent

force against another.  [Defendant]'s terroristic-threats conviction under Georgia law therefore

qualifies as a violent felony under the ACCA's elements clause."[5]  962 F.3d at 1321.  Here,

Guest was convicted under the same version of O.C.G.A. § 16-11-37(a) as Oliver was.  As noted

in the PSR, the probation officer verified Guest's two terroristic threats convictions using the

---

[4]      Facts contained in a PSR are deemed to be "undisputed and admitted if a party does not assert a
specific and clear objection to them before the sentencing court.  The failure to make such a challenge 'to
conclusory statements in the [PSR] renders those statements undisputed and permits the sentencing court
to rely upon them without error even if there is an absence of supporting evidence.'"  United States v.
Kicklighter, 346 F. App'x 516, 519 (11th Cir. 2009) (citations omitted).

[5]      The Eleventh Circuit has issued three opinions in Oliver.  Initially, the court determined
Georgia's terroristic threats statute was indivisible and overbroad, and, therefore, Oliver's prior
conviction under this statute did not qualify as a predicate offense for ACCA purposes.  946 F.3d 1276
(11th Cir. 2020).  The Eleventh Circuit then vacated that opinion but came to the same conclusion.  955
F.3d 887 (11th Cir. 2020).  However, in the most recent Oliver decision—the controlling decision—the
Eleventh Circuit panel reheard the case, then vacated its previous decisions, and concluded the terroristic
threats statute is divisible and Oliver's prior conviction did qualify as a predicate offense.  962 F.3d 1311
(11th Cir. 2020).

charging documents and judgment.  The circumstances underlying Guest's relevant convictions were Guest threatening three people he had previously assaulted with bodily injury, threatening to kill the responding sheriff's deputy, and threatening to kill a responding sheriff's deputy upon Guest's release from custody and telling the deputy Guest knew where he lived.  PSR, ¶¶ 33, 37. Based on these two convictions under Georgia law, the probation officer determined Guest was a career offender under § 4B1.1.  Id. at ¶ 26.

Although the facts underlying Oliver concern application of "violent felony" under the ACCA, the "crime of violence" enhancement under the Sentencing Guidelines "is routinely deemed to mean the same as 'violent felony' under the [ACCA]."  Quarterman v. United States, No. CR498-141, 2016 WL 1695312, at *2 (S.D. Ga. Apr. 25, 2016), report and recommendation adopted, 2016 WL 2646649 (S.D. Ga. May 9, 2016) (citing James v. United States, 550 U.S. 192, 206 (2007) ("closely tracks")); see also United States v. Martin, 864 F.3d 1281, 1282 (11th Cir. 2017) ("In determining whether a conviction is a crime of violence under U.S.S.G. § 4B1.2, we also rely on cases interpreting the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), because the § 4B1.2 definition of 'crime of violence' and [the] ACCA's definition of 'violent felony' are substantially the same.").  Thus, Oliver's holding regarding Georgia's terroristic threats statute qualifying as a "violent felony" under the ACCA supports a similar application to Guest under the "crime of violence" provision of the career offender enhancement of the Sentencing Guidelines.

Guest is likewise not entitled to any relief from application of the career offender provision of the Guidelines based on the Davis decision or the First Step Act.  In Davis, the Supreme Court determined the residual clause of 18 U.S.C. § 924(c) was unconstitutionally vague.  United States v. Davis, 139 S. Ct. 2319, 2323–24 (2019).  "Although Davis invalidated

the residual clause, § 924(c)(3)(B), it left intact the elements clause, § 924(c)(3)(A), which defines a crime of violence as a felony that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" <u>United States v. Harris</u>, No. 19-14503, 2020 WL 6947347, at *2–3 (11th Cir. Nov. 25, 2020) (quoting 18 U.S.C. § 924(c)(3)(A); citing <u>Davis</u>, 139 S. Ct. at 2323–24)). Even if Guest had been convicted in this Court of a § 924(c) violation—which he was not—the elements clause of this statute would still apply to Guest's terroristic threats convictions under Georgia law. The conclusion in <u>Davis</u> regarding the residual clause has no bearing on the matters before the Court.

Similarly, the First Step Act does not provide Guest with any relief, as it amended § 924(c) to reduce the severity of convictions under that statute after the Act's passage, and any change the Act implemented only applies to an offense committed before its enactment if the sentence was not imposed as of the date of the Act's amendment. <u>Mouzon v. United States</u>, CV119-130, 2020 WL 5790405, at *19 (S.D. Ga. Sept. 28, 2020). The First Step Act was enacted in December 2018, but Guest was sentenced years earlier, on June 23, 2015. Crim. Case, Doc. 35.

Guest clearly qualifies as a career offender under the Guidelines. Neither the <u>Davis</u> decision nor the First Step Act offers Guest any viable argument the career offender enhancement should not have been applied to him. For these reasons, the Court should **DENY** this portion of Guest's § 2255 Motion, as supplemented.

## II.    Whether Guest Should Receive Benefit of Amendment 782

Guest argues he should receive benefit of application of Amendment 782 because he no longer qualifies as a career offender. Doc. 1 at 22. Guest states Amendment 782 would reduce his offense level by two points. In response, the Government states Guest's argument fails

because he still qualifies as a career offender and, even if he were not, Judge Wood sentenced Guest under the November 2014 Guidelines, which already incorporated Amendment 782, meaning Guest already received the benefit of Amendment 782.  Doc. 35 at 10.

Section 2D1.1 of the Sentencing Guidelines sets forth the base offense levels applicable to drug offenses involving unlawful manufacturing, importing, exporting, trafficking, or possession of drugs.  U.S.S.G. § 2D1.1.  For offenses such as Guest's, which did not involve serious injury or death to another, the base offense level is determined by looking at the Drug Quantity Table.  U.S.S.G. § 2D1.1(c).  The Sentencing Commission amended the Drug Quantity Table via Amendment 782 to change "how the applicable statutory mandatory minimum penalties are incorporated into the Drug Quantity Table while maintaining consistency with such penalties . . . .  [T]he amendment reduces by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties . . . ."  U.S.S.G. App. C, amend. 782 (citations omitted).  Thus, under the version of § 2D1.1 in place at the time of Guest's offense and sentencing, he would have had a base offense level of 28 for the 40 grams of "ice" attributed to him.  § 2D1.1(c)(6).

However, as discussed in § I of this Report, Guest qualified and still qualifies as a career offender under the Guidelines; consequently, the career offender enhancement caused Guest's base offense level to be higher at 32.  PSR, ¶ 26 (citing § 4B1.1(a), (b)(3)).  Amendment 782 implemented a two-level offense level reduction to a majority of the offense levels assigned to the drug quantities set forth in § 2D1.1 of the Guidelines, as noted, and took effect on November 1, 2014.  U.S.S.G. App. C, amend. 782.  Guest was sentenced on June 23, 2015, and had full benefit of this Amendment, to the extent he might have otherwise qualified.  Crim. Case,

Doc. 35; U.S.S.G. § 1B1.10(d); PSR, ¶ 19.  Guest is not entitled to relief, and the Court should **DENY** this portion of his § 2255 Motion.

### III.     Whether Counsel Rendered Ineffective Assistance

Guest raises claims of ineffective assistance of counsel during the criminal proceedings against him.  Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.

(internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance."  Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the

result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th

Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the

outcome of the proceedings.  Strickland, 466 U .S. at 694.  "The likelihood of a different result

must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).

After pleading guilty, a defendant can only attack his resulting conviction in "strictly

limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255

challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea

was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and

the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563,

569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral

attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non-

jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues

not implicating the voluntariness of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th

Cir. 1992).  As discussed below, Guest's contentions Mr. McCrea was ineffective are precluded

by Guest's knowing and voluntary plea agreement.[6]

### A.     During Plea Negotiations

Guest contends Mr. McCrea rendered ineffective assistance of counsel during the plea

negotiation phase and, thus, his plea was not made knowingly or intelligently.  Doc. 1 at 28.

Specifically, Guest asserts his plea could not have been voluntary, given counsel's failure to have

the career offender enhancement removed, have the Amendment 782 benefit applied, and explain

---

[6]     Despite this determination, the Court addresses the relative merits of Guest's ineffective
assistance claims for the purpose of completeness.

the Government's burden as to drug type and amount.[7]  Id.  Guest notes there was nothing in his plea agreement indicating his sentence would be enhanced under § 4B1.1.  Id.

The Government states Guest does not allege he was coerced into pleading guilty or failed to understand the nature of the charges against him or that Judge Wood omitted anything from the Rule 11 proceedings.  Doc. 35 at 11.  Rather, the Government contends Judge Wood informed Guest there would be no forfeiture in this case, explained the maximum possible penalty she could impose for the offenses to which Guest was pleading guilty, and explained she would calculate Guest's sentencing range under the advisory Guidelines and the sentencing factors of 18 U.S.C. § 3553.  Id. at 12.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases."  United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core

---

[7]      As discussed in §§ I and II of this Report, Guest has shown no entitlement to relief under the career offender provision of the Guidelines or Amendment 782.  Thus, the Court need not address these claims under the ineffective assistance of counsel umbrella.  Even if Guest could show Mr. McCrea performed deficiently by failing to advance these two arguments during the criminal proceedings in this case, Guest cannot show he was prejudiced by this deficient performance and, therefore, does not meet both prongs of the Strickland standard.

principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).  The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding.  Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant must live with what he has told a court under oath.  A defendant's sworn testimony to the trial judge in open court is presumed to be truthful.  In the context of a plea hearing, the Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  Id.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."  Lee v. United States, 137 S. Ct. 1958, 1965 (2017).  "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded

14

guilty and would have insisted on going to trial." Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted).  A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)).  "Further, the decision to reject the plea must have been 'rational under the circumstances.'" Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

Guest and Mr. McCrea were able to negotiate a plea agreement with the Government whereby Guest agreed to plead guilty to one count of distribution of methamphetamine.  Crim. Case, Doc. 32.  In exchange, the Government agreed to not object to a recommendation Guest receive a three-level reduction for acceptance of responsibility and move the Court to dismiss the remaining counts against Guest.  Id. at 2–3.  The plea agreement set forth the statutory elements and factual bases of the offense to which Guest was pleading guilty.  Id. at 3.  Guest agreed he was guilty of the offense.  Id. at 4.  In addition, Guest affirmed he had read and reviewed the agreement with Mr. McCrea, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 9.

Guest appeared before Judge Wood for his Rule 11 proceeding.  Judge Wood addressed Guest and informed him the purpose of the hearing was to ensure he understood the case pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. McCrea, pleading guilty was what Guest wanted to do.  Crim. Case, Doc. 44 at 3–4.  Judge Wood inquired whether anyone had made, leaned on, or pushed Guest to offer to plead guilty, and he said no one had and pleading guilty was what he wanted to do.  Id. at 4.

After Guest was sworn in, Judge Wood told Guest he did not have to plead guilty.  Id. at 8.  Judge Wood also told Guest, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout the trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id.  However, Judge Wood cautioned Guest he would be waiving these rights if he pleaded guilty and Judge Wood accepted that guilty plea.  Id. at 9.  Guest stated he understood. Id.  When Judge Wood asked Guest how far he had gone in school, Guest informed her he had both a 12th grade education (but did not receive a diploma) and a general equivalency degree ("GED").  Id. at 5–6.  Judge Wood inquired whether Mr. McCrea and Guest went through the documents involved in the case, including the indictment and plea agreement, and Guest said he and Mr. McCrea had gone over the facts and law of his case, the indictment, and the plea agreement together.  Id. at 9.  Guest stated Mr. McCrea had spoken with him in general terms about the advisory Sentencing Guidelines, had no questions about the Guidelines, and affirmed he was satisfied with Mr. McCrea's representation and had no complaints whatsoever.  Id. at 9– 10.

Judge Wood reviewed the indictment with Guest, the essential elements of the crime to which he was pleading guilty and the other counts of the indictment naming him, and explained the Government would have to prove those essential elements.  Id. at 10–13.  Judge Wood advised Guest, in order for him to be convicted of count 3 of the indictment, the Government would have to prove beyond a reasonable doubt two essential elements: (1) Guest distributed a quantity of methamphetamine, a Schedule II narcotic; and (2) he did that knowingly and willfully.  Id. at 12–13.  By pleading guilty, Judge Wood noted Guest was admitting the essential elements of the crime to which he intended to plead guilty were satisfied.  Id. at 13.  Judge Wood advised Guest of the maximum sentence she could impose, which was not more than 20 years in prison.  Id.  Moreover, Judge Wood explained to Guest, in imposing a sentence upon him, she would take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 14.  Judge Wood also stated she would consider some "major factors," including Guest's criminal history, his role in the offense, and whether he told the truth and accepted responsibility.  Id.  Guest stated he understood and had no questions.  Id.  Judge Wood inquired whether anyone had promised Guest an exact sentence, and Guest stated no one had, to which Judge Wood responded that was good because all anyone could provide Guest was his "best guess" which was not binding upon her.  Id. at 14–15.  Guest verified Mr. McCrea had his permission to negotiate with the United States to reach a plea agreement.  Id. at 15–16.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Greg Gilluly stated the material provisions were:

> [T]he Government agrees to not object to a recommendation from the United States Probation Office that the Defendant receive a full three-level reduction for acceptance of responsibility based upon the timeliness of the Defendant's guilty plea and provided that he truthfully admits the conduct comprising the offense of conviction . . . . Additionally, the Government agrees to [move to] dismiss the remaining counts of the indictment as to this Defendant at sentencing.

> [The Defendant] agrees to plead guilty to Count 3 of the indictment; he agrees to acknowledge at the time of the plea the truth of the factual basis that is contained in the plea agreement.  He . . . waives his right to appeal on any ground with only three exceptions.  He may appeal if the sentence exceeds the statutory maximum.  He may appeal his sentence if the sentence exceeds the advisory guideline range determined by this Court at sentencing, and he agrees to waive his right to appeal unless the Government appeals . . . .
>
> The Defendant entirely waives his right to collaterally attack the conviction and sentence on any ground and by any method including, but not limited to, [28 U.S.C. § 2255,] . . . [except for] regarding allegations of ineffective assistance of counsel.

Id. at 16–17.  Judge Wood asked Guest if AUSA Gilluly's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 18.  Guest also stated he read the plea agreement before he signed it and Mr. McCrea answered any questions he may have had.  Id.  Guest affirmed no one had made him any promises regarding the outcome of him case, other than the provisions contained in the plea agreement.  Id. at 18–19.  Judge Wood also discussed the appeal waivers contained in the plea agreement, including the limited exceptions if: she were to sentence Guest above the statutory maximum; she were to sentence Guest above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal.  Id. at 19.

Judge Wood then asked Guest whether he wished to still plead guilty to count 3 of the indictment because he was in fact guilty of that count, and he answered in the affirmative.  Id. at 20.  Judge Wood also asked Guest whether he understood the rights and privileges he was waiving if she accepted her plea, and Guest said he did.  Id.  Judge Wood determined Guest's offer to plead guilty was made "knowingly" and "voluntarily."  Id. at 21.  Guest agreed.  Id.

The Government provided a factual basis for Guest's plea of guilty by calling Agent Livingston to testify.  Id.  Agent Livingston testified he was one of the lead agents in the

investigation into Guest outlined in the indictment.  Id. at 22.  Agent Livingston stated he and

other agents met with a confidential informant on June 11, 2013, in Pierce County to make a

controlled purchased of methamphetamine from Guest.  Id.  After the informant and his vehicle

were searched, agents provided the informant with $1,000.00 in Government funds and a digital

recorder.  Id.  Agent Livingston stated the informant picked up Guest at his residence and they

met another individual at a convenience store near Blackshear, and Guest got into a car with

someone named David King.  Id. at 22–23.  Guest and the informant remained under

surveillance, even though there was "a lot of driving involved[,]" and the informant gave Guest

the Government funds, in exchange for "approximately 17 gross grams of methamphetamine[.]"

Id. at 23.  Agent Livingston verified Guest sold a "quantity of methamphetamine to the"

informant in crystallized form, which is a Schedule II controlled substance.  Id. at 24.  Guest

admitted to the truth of Agent Livingston's testimony.  Id. at 25.  Judge Wood was "satisfied"

there was a factual basis for a plea, accepted Guest's plea, and adjudged him guilty of count 3 of

the indictment.  Id.  Judge Wood advised Guest a probation officer would prepare a PSR, and the

Court would schedule a sentencing hearing after the PSR was disclosed to the Government and

to Mr. McCrea.  Id.

       To be clear, Judge Wood informed Guest at the outset of the initial Rule 11 hearing the

purpose of the hearing was for him to understand the case pending against him, the rights he was

waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what

Guest wanted to do after consultation with his attorney.  Id. at 3–4.  After telling Guest he would

be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the

Government could prosecute him for perjury, Guest confirmed no one was forcing him to plead

guilty and that pleading guilty was what he wanted to do.  Id. at 4.  Judge Wood discussed the

specific rights Guest was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Guest he would waive those rights if he pleaded guilty and she accepted his plea.  Id. at 8–9.  Guest stated he had spoken with Mr. McCrea about the facts and law of his case, including the plea agreement, indictment, and the sentencing Guidelines in general terms.  Id. at 9.  Guest verified AUSA Gilluly's summary of the plea agreement was consistent with the plea he had signed.  Id. at 18.  Judge Wood asked Guest whether he wanted to plead guilty because he was, in fact, guilty of count 3 of the indictment, and he answered in the affirmative.  Guest declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so.  Judge Wood determined Guest's guilty plea was knowing and voluntary.  Id. at 21.  Agent Livingston then provided a factual basis for Guest's plea, and Guest agreed with the Government's factual basis.  Id. at 25.  Judge Wood accepted Guest's plea and adjudged him guilty of count 3 of the indictment.  Id.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Guest's assertion Mr. McCrea was ineffective during the plea phase and, had it not been for Mr. McCrea's ineffective assistance, he would not have pleaded guilty, is belied by the record before the Court and is without merit.  If Guest had not entered a plea agreement, proceeded to trial on all counts of the indictment against him and been convicted of those counts, he would have faced a sentence of up to 40 years in prison.[8]  Crim. Case, Doc. 2.  Because Guest pleaded guilty to one count of the indictment, his sentencing range was 151 to 188 months' imprisonment, a range far less than he would have faced by statute had he not pleaded guilty and received a three-point level reduction for acceptance of responsibility.  What is more, the record

---

[8]     The Court recognizes the applicable standard is not whether the result of a trial would have been different than entering a plea.  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017).  The Court notes this merely as illustrative of the reasonableness of Guest's acceptance of a plea agreement.

before the Court, including the statements Guest rendered under oath and under penalty of perjury, contradicts Guest's contentions in his Motion as to Mr. McCrea's assistance during the plea process and whether his plea was entered into knowingly and voluntarily.  Further, Guest has not shown that not accepting the plea would have been rational under the circumstances, Martinez, 684 F. App'x at 922, and instead offers conclusory allegations in this regard.  Guest is not entitled to his requested relief, and the Court should **DENY** this portion of his Motion.

### B.     During Sentencing

Guest avers Mr. McCrea failed to advise him of the Government's obligations under U.S.S.G. § 2D1.1, which treats the weight of a controlled substance as the weight of any mixture of substance containing a detectable amount of that substance.  Doc. 1 at 23.  Guest asserts the actual amount of methamphetamine in a mixture that is pure methamphetamine is a controlling factor.  Guest states Mr. McCrea did not advise him there was a difference between methamphetamine and ice for sentencing purposes.  Id.  Guest further states Mr. McCrea failed to explain the Government had the burden to prove the substance was either methamphetamine or ice and the level of purity of the substance, so as to establish the exact amount in grams for which he was responsible.  Id.  Guest asserts information from the investigative reports revealed the improbability of all 40 grams of the illegal substance being ice.  Id. at 24.

The Government notes Guest's ignorance of specific Guidelines does not invalidate his plea.  Doc. 35 at 16.  In addition, the Government observes Guest's contentions in this regard do not establish ineffective assistance.  Id.  What is more, the Government maintains Guest had knowledge of all sentencing factors, including § 2D1.1, no later than when he read and discussed his PSR with Mr. McCrea.  Id. at 17.  Further, the Government states the § 2D1.1 sentencing

factors were immaterial to his sentence, as he was sentenced to a higher offense level based on the career offender enhancement.  Id. at 18.

"Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."  United States v. Jokhoo, 806 F.3d 1137, 1141 (8th Cir. 2015) (quoting United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005)).  A court considering relevant conduct "must consider 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully cause by the defendant.'"  United States v. Tillman, 2:17-CR-8, 2017 WL 2728209, at *3 (S.D. Ga. June 23, 2017) (quoting U.S.S.G. § 1B1.3(a)(1)(A).  In addition, the base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]"  Id. (quoting U.S.S.G. § 1B1.3(a)(2)).  "Courts have consistently held . . . conduct forming the basis of counts . . . dismissed from the indictment pursuant to a plea agreement[] is relevant conduct for sentencing."  McReed v. United States, Nos. CV113-121, CR 111-302, 2014 WL 1238037, at *8, n.4 (S.D. Ga. Mar. 21, 2014) (citing United States v. Watts, 519 U.S. 148, 149–53 (1997) (holding sentencing court may consider facts relating to other charges, even ones of which defendant has been acquitted); see also United States v. Kennedy, 326 F. App'x 509, 511 (11th Cir. 2009) (relevant conduct for sentencing included quantities of drugs that were subject of dismissed counts of indictment.); United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("[A] sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts.")).

Under the Guidelines, the Court was to consider all of Guest's relevant conduct, even the dismissed counts of the indictment.  In addition, the plea agreement Guest and the Government

reached informed him the Guidelines calculation would take into account all of his relevant conduct, not just the facts underlying the counts to which he was pleading guilty. Crim. Case, Doc. 32. What is more, Guest stated at the Rule 11 hearing he understood the Court could impose a sentence upon him up to the statutory maximum, which was 20 years' imprisonment. Crim. Case, Doc. 44 at 13. Thus, the Court correctly considered conduct related to the dismissed counts in assessing a proper sentence for Guest and sentenced him for the offense of distribution of a quantity of methamphetamine, without reference to whether this was "ice" or methamphetamine in another form or a quantity specified in the indictment or during the Rule 11 proceedings. Guest's contention to the contrary—couched as an ineffective assistance of counsel claim—is without merit, as Guest cannot meet either prong of the Strickland standard. In addition, § 2D1.1 concerns the base offense levels for offenses involving drugs. However, because the career offender provision resulted in a higher base offense level than § 2D1.1, the career offender provision established Guest's offense level, not § 2D1.1. U.S.S.G. § 4B1.1(a), (b)(3); PSR ¶¶ 20, 26. Accordingly, Mr. McCrea did not render ineffective assistance by failing to explain "the Government's obligations" under § 2D1.1, and the Court should **DENY** this portion of Guest's Motion.

**C.     On Appeal**

Guest contends Mr. McCrea "foolishly" filed an Anders brief, even though issues relating to Georgia's terroristic threats statute were being litigated in several courts, including the Eleventh Circuit Court of Appeals.[9] Doc. 1 at 30. The Government responds any argument Mr. McCrea was ineffective on appeal because he failed to raise a career offender argument was and still is without merit. Doc. 35 at 19.

---

[9]     Anders v. California, 386 U.S. 738 (1967). Briefs filed based on this case are based on the belief there are no non-frivolous grounds to appeal.

McCrea filed an <u>Anders</u> brief after he "determined that no arguably meritorious issues exist to be appealed in this case." <u>United States v. Guest</u>, No. 15-13065 (11th Cir. Dec. 28, 2015), p. 7.  Guest filed a pro se brief with the Eleventh Circuit after Mr. McCrea filed his motion to withdraw as counsel; Guest's statement of the issue concerned "the lack of predicates that can satisfy the requisit[e] crime of violence under the Career Offender guidelines.  The Georgia Statute for Terroristic threats, fails to satisfy this threshold . . . ." <u>Id.</u> (11th Cir. June 10, 2016).  The Eleventh Circuit panel noted its "independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct.  Because independent examination of the entire record reveals no arguable issues of merit, . . . Guest's conviction and sentence [are] **AFFIRMED**." <u>Id.</u> (11th Cir. Apr. 24, 2017), p. 2 (emphasis in original).  After the Eleventh Circuit issued its mandate, Guest filed a motion to recall that mandate or for reconsideration—raising the same issues as he does here, which the Eleventh Circuit denied.  <u>Id.</u> (11th Cir. May 24, 2017, Mar. 2 & Mar. 29, 2018).

The Court should **DENY** Guest's claim Mr. McCrea rendered ineffective assistance by failing to file any appeal to raise claims concerning Georgia's terroristic threats statute.  The Eleventh Circuit considered Guest's arguments relating to the Georgia terroristic threats statute and the application of the career offender provision of the Guidelines and found his arguments to be without merit on two occasions.  Thus, the Court should **DENY** this portion of Guest's Motion.

## IV.     Guest's Motion for Summary Judgment, Doc. 29

In this Motion, Guest contends there is no reason whatsoever for this Court to keep the stay in place because the <u>Oliver</u> decision and the First Step Act reveal he should not have been given the career offender enhancement.  Doc. 29 at 4.  Guest notes he did not serve more than 12

months for his two prior state convictions, rendering him "[a]ctually, factually, and legally innocent" of the career offender enhancement and subject to immediate release.  Id.  The Government avers Guest's Motion should be denied.  Doc. 35 at 19.

For the reasons already discussed herein, Guest is not entitled to his requested relief— whether in the context of his § 2255 Motion or his Motion for Summary Judgment.  Guest qualified as a career offender at sentencing and still qualifies as such.  Thus, the Court should also **DENY** this Motion.

## V.     Guest's Motion to Grant § 2255 Motion, Doc. 38

Guest argues the Government failed to respond to this Court's October 13, 2020 Order, doc. 34, within 30 days of that Order, as directed.  Doc. 38 at 2.  Thus, Guest argues, he should be entitled to his requested relief and the Court should grant his § 2255 Motion.  Id. at 2–3.

The Government filed its Response to the Court's Order on November 12, 2020, which also serves as the Government's Response to Guest's § 2255 Motion and almost all Motions he had filed up to that time, doc. 35.  As the Government filed its Response within 30 days of the October 13, 2020 Order, the Court should **DENY** Guest's Motion to Grant.[10]

## VI.    Guest's Evidentiary Hearing Request, Doc. 1 at 14

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C.

---

[10]     Guest indicates he did not receive a copy of the Government's November 12, 2020 Response at the time it was filed.  Doc. 38.  However, the Government's November 12, 2020 Response includes a certificate of service stating the Response was mailed to Guest at his address of record at that time. Doc. 35 at 20.  Regardless, Guest is plainly aware of the November 12, 2020 Response, as he has addressed it in a subsequent filing, doc. 40.  Guest has also had ample time to obtain a copy of the Response.  Nonetheless, the Court **DIRECTS** the Clerk of Court to provide Guest with an additional copy of the Government's November 12, 2020 Response, doc. 35, contemporaneous with providing a copy of this Report and Recommendation.

§ 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a movant is not entitled to an evidentiary hearing where she asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).  Because Guest's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.  Consequently, the Court **DENIES** Guest's request for an evidentiary hearing.

**VII.   Leave to Appeal *in Forma Pauperis* and Certificate of Appealability**

The Court should also deny Guest leave to appeal *in forma pauperis*.  Though Guest has not yet filed a notice of appeal, it would be appropriate to address these issues at this time.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit

either in law or fact." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

      Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u>  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

      Based on the above analysis of Guest's Motion and other filings and the Government's Responses and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Guest a Certificate of Appealability, Guest is advised he "may not appeal the denial but may

seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Guest's § 2255 Motion, Motion for Summary Judgment, and Motion to Grant, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Guest *in forma pauperis* status on appeal and a Certificate of Appealability. I **GRANT** Guest's Motions to Supplement but **DENY** Guest's request for an evidentiary hearing, doc. 1 at 14.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of March, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA